UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY SCHULTZ,

        Plaintiff,         Civil Action No. 14-13330
                                          Honorable Robert H. Cleland
                                          Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT [10]

Plaintiff Jerry Schultz ("Schultz") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Commissioner filed an unopposed motion for summary judgment [10], which has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Schultz is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [10] be GRANTED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.   REPORT

### A.   Litigation History

When Schultz commenced this action, he was represented by attorney Richard Doud of the firm Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Firm"). Doud filed a motion for summary judgment on Schultz's behalf on December 4, 2014. [9]. On April 18, 2015, attorney James Smith ("Smith") of the Firm moved to substitute into the action for attorney Doud on behalf of Schultz. [11].

On May 20, 2015, this action was transferred to a three-judge panel (the "Panel") to address the Firm's representation of Social Security claimants in the Eastern District of Michigan. [5/20/15 docket entry]. Pursuant to 15-AO-033, on June 9, 2015, the Panel administratively stayed this action. [12]. On October 19, 2015, pursuant to 15-AO-045, the Panel determined that affected cases (including this one) would be transferred back to the originally assigned judge, and that it would be each such judge's responsibility to determine how to proceed. [10/19/15 docket entry].

The Court was later advised that the Firm had notified Schultz that he would have until December 30, 2015, to retain a new attorney and have that attorney file an appearance in this action. [13]. In turn, the Court notified Schultz that if no such appearance was filed by December 30, 2015, it would consider him to be continuing his appeal without legal representation, *i.e.*, that he would be representing himself in this action *pro se*. [*Id.*]. On March 4, 2016, because no new attorney had appeared on Schultz's behalf, the Court entered an Order deeming him to be representing himself *pro se*, striking his prior summary judgment motion from the docket, and amending the scheduling order to give Schultz until April 4, 2016, to file a

summary judgment motion. [15].[1] To date, Schultz has not filed a new motion for summary judgment, and the Commissioner has informed the Court that she will rely on her original brief. [16].

### B. Procedural History

On April 4, 2012, Schultz filed an application for DIB, alleging a disability onset date of March 3, 2007. (Tr. 111-117). This application was denied initially on June 26, 2012. (Tr. 63-66). Schultz filed a timely request for an administrative hearing, which was held on March 11, 2013 before ALJ Keith Kearney. (Tr. 29-53). Schultz, who was represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert Donald L. Hecker, Ph.D. (*Id.*). On May 3, 2013, the ALJ issued a written decision finding that Schultz is not disabled. (Tr. 17-25). On June 25, 2014, the Appeals Council denied review. (Tr. 1-3). Schultz timely filed for judicial review of the final decision on August 27, 2014. (Doc. #1).

### C. Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or

---

[1] In light of the fact that Schultz was proceeding *pro se*, the Court noted that, "his filing need not be in the form of a formal legal brief – rather, Schultz may simply advise the Court in writing as to why he believes the Commissioner's decision is in error." [*Id.*].

> combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or his past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or his past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or his age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.   Background**

   *1.   Plaintiff's Reports and Testimony*

In an undated disability report, Schultz indicated that he suffers from a "broken back." (Tr. 129). Schultz reported that he stopped working on March 12, 2012, as a result of this condition. (*Id.*). With respect to his education level, Schultz completed the twelfth grade and did not pursue any further studies. (*Id.*). He indicated that he was unable to take any medications for his condition because he is "al[l]ergic to everything." (Tr. 134). Schultz reported that he was treated in a hospital for a "broken back" in March 2007, where he was placed in a back brace and received X-rays and a MRI/CT scan of the back. (Tr. 133). He also received a knee X-ray in the

4

summer of 2007. (Tr. 132).

In a function report dated April 10, 2012, Schultz stated that he lives in a private house with his family. (Tr. 143). When asked to describe how his condition limits his ability to work, Schultz stated: "due to severe back pain constantly I am unable to move, bend, lift, reach, sit or stand for extended periods of time. I have decreased range of motion in my spine for flexion and extension." (*Id.*). His daily routine consists of showering, eating two daily meals, watching television and "short walks in the yard." (Tr. 144). Schultz reported that he can no longer work as a mechanic and perform household chores or yard work. (*Id.*). He also has trouble sleeping because he is unable to lay down in a bed on account of his back pain. (*Id.*). Schultz indicated that he has difficulty dressing and must wear sweatpants that he can pull up easily. (*Id.*). He cannot bathe in a tub and must always use a shower. (*Id.*). Schultz reported that he takes care of most of his personal hygiene needs himself, but that he has trouble cleaning himself after using the restroom due to limited range of motion. (*Id.*). While he used to cook all of his own meals, he rarely does so now and mostly eats microwave meals or carry-out. (Tr. 145). Schultz reported that his son does all of the household chores and mows the lawn. (*Id.*). He is able to drive a car only for short distances and he noted that his mother and son shop for him. (Tr. 146). Schultz is capable of paying bills, counting change, handling a checking and savings account. (*Id.*). His main hobbies are watching television for as long as he can sit, although he must rotate between sitting and standing positions. (Tr. 147).

When asked to identify functions impacted by his condition, Schultz checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks and concentration. (Tr. 148). He noted that he cannot lift over ten pounds; bend; climb stairs; and he must consistently reposition himself because of back pain. (*Id.*). Schultz reported

that he can walk 40 feet before taking a break and that he needs to rest for approximately five minutes before resuming. (*Id.*). Schultz has used a back brace on a daily basis since January 2007. (Tr. 149). Regarding medications, Schultz reported that he cannot take any pain relievers as he is allergic to such medicine. (Tr. 150).

On June 25, 2012, Natalie Gray, M.D., the state agency reviewer, found that Schultz could perform light work with the following limitations: occasionally lift 20 pounds; frequently lift 10 pounds; sit, stand and/or walk six hours in an eight-hour workday; never climbing ladders, occasional stooping; no exposure to workplace hazards such as machinery or elevated heights; and frequent ramp climbing, kneeling, crouching and crawling. (Tr. 58-60).

At the March 11, 2013 hearing before the ALJ, Schultz testified that all of his earnings after the alleged onset date resulted from self-employment as an automotive mechanic. (Tr. 36). He stated that he worked 20 to 30 hours per week, but that his son performs almost 90 percent of the actual automotive repairs. (*Id.*). With respect to his impairments, Schultz stated that he suffers from constant back pain. (Tr. 37). He rated his pain as an eight or nine on a scale from one to ten. (*Id.*). Schultz acknowledged that he suffers from pain flare-ups if he sits or stands for too long. He estimated that he can sit or stand for ten to 15 minutes before needing to change positions. (*Id.*). Schultz testified that he can sit for longer periods of time if his feet are elevated waist high, which he tries to do most of the day. (Tr. 38). He can walk "not even a block" and he spends three-quarters of the day laying down. (*Id.*). Schultz testified that he cannot lift his right arm above his head and that he must use a cane to ambulate throughout the day. (Tr. 39) He also has balancing issues because of pain in his right knee. (*Id.*).

Schultz testified that his mother and son help him with the household chores. (Tr. 40). He further attested that he gets approximately three to four hours per night of uninterrupted sleep

6

and that he must nap between 15 minutes to an hour during the day. (*Id.*). Schultz indicated that he can lift about a gallon of milk in each hand; he has trouble climbing and descending stairs; and that he cannot operate foot controls, such as brakes or gas pedals, for long periods of time. (Tr. 41). In fact, Schultz stated that during the 86-mile drive to the hearing he had to take two five-minute breaks. (*Id.*).

2.   *Medical Evidence*

The Court has thoroughly reviewed Schultz's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

3.   *Vocational Expert's Testimony*

Donald L. Hecker, Ph.D., testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 48-53). The ALJ asked the VE to imagine a claimant of Schultz's age, education, and work experience, who had the exertional capacity for light work with the following limitations: occasional operation of foot controls; limited to frequent overhead reaching and frequent reaching all around with the right upper extremity; occasional climbing of ramps and stairs; no climbing of ladders, scaffolds or ropes; occasional balancing, stooping, kneeling, crouching and crawling; no working at elevated heights; no working around hazards such as boxes on the floor, doors that are ajar or approaching people; and a sit/stand option that would allow him to be off-task for ten percent of the workday. (Tr. 49). The VE testified that the hypothetical individual would not be capable of performing Schultz's past relevant work as an automotive mechanic (Tr. 48-49), although he could perform unskilled light work such as a packer (1,800 jobs), inspector/checker (1,800 jobs) or office mail sorter (2,000 jobs). (Tr. 49-50). The ALJ further inquired whether the imagined claimant would be able to perform the same

7

jobs at the sedentary level with a cane for prolonged ambulation or ambulation on uneven terrain. (Tr. 50). The VE attested that the imagined claimant could not perform the above-listed jobs, but could work as a surveillance systems monitor (500 jobs), inspector (2,500 jobs) or packer (1,800 jobs). (Tr. 51). The ALJ then asked the VE to imagine a claimant with the same restrictions from the first hypothetical "who would be required to have their feet elevated at waist level at least 25 percent of the work period." (Tr. 51). The VE responded that such an individual would be precluded from working. (*Id.*). On cross-examination, Schultz's attorney asked the VE whether any jobs existed in the national economy for a hypothetical individual who would be "absent from work two or more days a month on a continuing ongoing basis." (Tr. 52). The VE similarly responded that such an individual would be precluded from working. (*Id.*).

    **E.**    **The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Schultz is not disabled under the Act. At Step One, the ALJ deferred any decision as to whether Schultz had engaged in substantial gainful activity after his alleged onset date "to more fully develop the evidence." (Tr. 20). According to Schultz's earnings records, he was self-employed as a car mechanic earning $6,261 in 2008, $5,652 in 2009, $8,684 in 2010, $9,677 in 2011, $6,914 in 2012, and $0 in 2013. (Tr. 19). The ALJ questioned Schultz's credibility on this issue since his testimony at the hearing, that he worked at least 80 hours per month, contradicted his earlier statement in his April 4, 2012 disability report that he worked 168 hours per month. (*Id.*). At Step Two, the ALJ found that Schultz has the severe impairments of bilateral degenerative joint disease of the knees; bilateral degenerative joint disease of the hips; right shoulder pain; and degenerative disc disease of the thoracolumbar spine. (Tr. 20). At Step Three, the ALJ found that Schultz's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.

8

(Tr. 20-21).

The ALJ then assessed Schultz's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following limitations: occasional operation of bilateral foot controls; he must have the opportunity to use a cane for walking long distances and/or over uneven surfaces; he must have an at will stand/sit option, provided that it does not take him off-task more than ten percent of the workday; he can frequently lift his right upper extremity overhead and reach in all directions; occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, kneeling, stooping, crouching, and crawling; he must avoid hazards such as unprotected heights; and avoid normal hazards such as moving doors, moving people and boxes on the floor. (Tr. 21).

At Step Four, the ALJ determined that Schultz is unable to perform any past relevant work. (Tr. 24). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Schultz is capable of performing a significant number of jobs that exist in the national economy. (*Id.*). As a result, the ALJ concluded that Schultz is not disabled under the Act. (Tr. 25).

### F.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence

supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

**G.     Analysis**

In the interest of ensuring that Schultz's claim for benefits is fairly considered, even in the absence of a supporting brief, the Court has independently examined the record, and evaluated the merits of the Commissioner's arguments (which were responsive to Schultz's initial arguments) to determine whether the ALJ's decision is supported by substantial evidence.

*1.     Substantial Evidence Supports the
        ALJ's Finding that Schultz Is Not Disabled*

As set forth above, the ALJ found that Schultz has the RFC to perform sedentary work with the following limitations: occasional operation of bilateral foot controls; he must have the opportunity to us a cane for walking long distances and/or over uneven surfaces; he must have an at will stand/sit option, provided that it does not take him off-task more than ten percent of the workday; he can frequently lift his right upper extremity overhead and reach in all directions; occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; occasional balancing, kneeling, stooping, crouching, and crawling; he must avoid hazards such as unprotected heights; and avoid normal hazards such as moving doors, moving people and boxes on the floor. (Tr. 21). Based in part on the VE's testimony, the ALJ concluded that Schultz is not disabled under the Act because he is capable of performing a significant number of jobs that exist in the national economy. (Tr. 24-25).

*A.     Credibility*

The ALJ reasonably discounted Schultz's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 21-23). As the Sixth Circuit has held, determinations of credibility related to subjective complaints

11

of pain, or other symptoms, rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain, or other symptoms, is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Here, the ALJ adequately discussed the objective medical evidence regarding Schultz's physical impairments and reasonably explained why such evidence compelled a finding that his allegations of disability were not fully credible. (Tr. 21-23). The ALJ noted that Schultz visited the emergency room on January 3, 2007 after an engine hoist fell on him while performing automotive repairs at his home. (Tr. 183). A CT-scan revealed a moderate compression burst fracture of the T-12 vertebra with minimal encroachment of the fracture fragment into the spinal canal causing mild spinal stenosis. (Tr. 193). There was no discernable epidural hematoma and the remaining lumbar and thoracic vertebra were unremarkable with no evidence of acute fractures or dislocations. (*Id.*). Diagnostic imaging also indicated mild degenerative changes in

the lower lumbar and mid-thoracic spine and no abnormalities of the cervical spine. (Tr. 196). Schultz was fitted for a back brace and discharged from the hospital two days later. (Tr. 183).

On January 17, 2007, Schultz visited Arup Sarkar, M.D., as a new patient. (Tr. 223). In a Michigan Department of Human Services "Medical Needs" form dated February 19, 2007, Dr. Sarkar indicated that Schultz would not be able to return to his former employment for approximately six to 12 months, but that he could start working at another job after six months. (Tr. 220). Dr. Sarkar noted that Schultz was "improving," and did not need an assistive device to ambulate, but that he could not lift or carry any objects, even ones weighing less than ten pounds; could stand and/or walk less than two hours in an eight-hour workday; could sit less than six hours in an eight-hour workday; and could not operate foot/leg controls. (Tr. 222). Approximately one year later, Schultz presented with right knee pain. (Tr. 225). An X-ray of the knee revealed sclerosis that was "possibly a focus of healed osteochondritis dissecans or osteochondral injury." (*Id.*). Dr. Sarkar further opined that no other abnormalities were apparent. (*Id.*).

The next medical record in the file is from Schultz's consultative physical examination with Siva Sankaran, M.D., on June 6, 2012.[2] (Tr. 250). During the examination, Schultz complained of left hip and right knee pain; he stated that he was unable to walk more than 50 yards at a time; could stand for 25-30 minutes at a time; and he reported that he suffers from middle back pain. (*Id.*). Schultz informed Dr. Sankaran that, "he did not have any problem coming here and driving for 50 minutes." (*Id.*). Schultz exhibited severe tenderness in the

---

[2] The lack of medical treatment by Schultz also supports the ALJ's credibility analysis, and the Court notes that the ALJ specifically referenced the "longitudinal history" as having "put [Schultz's] credibility at issue." (Tr. 23). *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283–284 (6th Cir. 2009) (lack of treatment implies an alleviation or absence of symptoms); *McClellan v. Comm'r of Soc. Sec.*, 2014 WL 4473869, at *7 (E.D. Mich. Aug. 14, 2014) ("The ALJ properly considered this lack of treatment in discounting plaintiff's allegations of disabling symptoms.").

dorsal spine although no deformity was discernable. (Tr. 252). He was unable touch his toes or squat on account of back pain. (*Id.*). A straight-leg test was negative bilaterally. (*Id.*). Schultz's left hip was painful and tender with decreased range of motion and his right knee exhibited the same symptoms but with normal range of motion. (*Id.*). Dr. Sankaran noted that Schultz's pedal pulses were normal and that he could move around without the use of a walking aid. (*Id.*). Imaging of the thoracic spine showed mild osteoporotic degeneration, but no significant fractures, dislocations or protrusions. (Tr. 253). The disc spaces appeared normal and the paraspinal soft tissues were unremarkable. (*Id.*). However, X-rays of the thoracic spine showed a partial compression fracture in the L-1 vertebral body along with slight anterior wedging. (*Id.*, 255). Images of the lumbar spine indicated mild degenerative disc changes and the cervical spine was "essentially normal." (Tr. 254-55).

On August 31, 2012, Schultz underwent an MRI of the thoracic spine. (Tr. 276-77). These images revealed small disc protrusions at T3-T4, producing mild right ventral thoracic cord change. (Tr. 277). At T8-T9, there was mild left ventral cord flattening without cord signal change. (*Id.*). As indicated in earlier images, there was anterior compression deformity with small superior T-12 vertebral body retropulsed contour deformity without thoracic cord effacement. (*Id.*). Based on the foregoing, in October 2012, Dr. Sarkar opined that Schultz "would have a great deal of difficulty working in any regular job" and that he would be "unable to walk or stand greater than 2 hours in an 8 hour period in lifting anything greater than 10 pounds even 10 pounds he can lift only intermittently." (Tr. 269).

An MRI of Schultz's left hip, performed on January 28, 2013, showed moderated osteoarthritis bilaterally with no evidence of bursitis, healing fracture; avascular necrosis; or femoris acetabular impingement. (Tr. 273). And X-rays of the right knee revealed minimal

14

degenerative changes at the patellofemoral joint with no acute osseous abnormality. (Tr. 275).

After evaluating the above medical evidence, the ALJ found that Schultz could perform a range of sedentary work consistent with the limitations imposed in the RFC. (Tr. 21-23). In addition, the ALJ emphasized Schultz's own hearing testimony that he continues to supervise his son's car repair work; he is able to drive a car; and he can walk with a cane. (Tr. 23, 39, 41, 43)

Moreover, the mere fact that certain aspects of the record (*e.g.*, Schultz's own testimony and subjective complaints to physicians) may be consistent with the claimant's alleged impairment does not necessitate a finding that the claimant was fully credible regarding *the extent* to which his symptoms can be attributed to the impairment. Indeed, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). This is precisely why the ALJ must consider and weigh "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929. In this case, the ALJ adhered to this standard and determined, based upon a review of the medical evidence, as well as Schultz's testimony, that he was not entirely credible to the extent his claimed level of physical impairments exceeded the RFC assessment. (Tr. 22). Thus, Schultz has not shown that the ALJ's overall evaluation of the evidence was in any way erroneous.

In view of the foregoing, the Court concludes that Schultz has not shown a "compelling

reason" to disturb the ALJ's credibility determination, *Smith*, 307 F.3d at 379, particularly where the ALJ provided a reasonable explanation for discounting Schultz's credibility, and that explanation is supported by substantial evidence.[3]

### B. The ALJ's Evaluation of Treating Source Opinion

Social Security regulations require ALJs to give treating source opinions controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotations omitted). While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" – such weight is only appropriate if the opinion is well-supported and consistent with the record as a whole. *Soc. Sec. Rul.* 96-2p, 1996 SSR LEXIS 9, at *5 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]reating physicians' opinions are only given such deference when supported by objective medical evidence.").

If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, "considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see also* 20 C.F.R. §416.927(c)(2) (requiring the ALJ to provide "good reasons" for weight given to treating source

---

[3] The ALJ also properly found that Schultz's credibility was diminished by the fact that he continued to work after the alleged onset date and he proffered inconsistent statements regarding the amount of hours that he worked during that time. (Tr. 19, 22).

16

opinion).

Any argument that the ALJ improperly evaluated Dr. Sarkar's medical opinion lacks merit. First, the ALJ appropriately discounted Dr. Sarkar's statement that Schultz "would have a great deal of difficulty working in any regular job" (Tr. 269) because it speaks to whether Schultz is disabled, which is a legal conclusion specifically reserved for the Commissioner. *See e.g., Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008) (stating that "[a] physician's opinion that a claimant is disabled is entitled to no deference because it is the prerogative of the Commissioner, not the treating physician, to make a disability determination."). Second, insofar as Dr. Sarkar opined that Schultz was "unable to walk or stand greater than 2 hours in an 8 hour period in lifting anything greater than 10 pounds even 10 pounds he can lift only intermittently [sic]" (Tr. 269), the ALJ actually incorporated these restrictions into his RFC assessment by limiting Schultz to sedentary work. *See* 20 C.F.R. § 404.1567(a) (stating that sedentary work involves "lifting no more than 10 pounds at a time"); *Soc. Sec. Rul.* 83-10, 1983 SSR LEXIS 30, at *13 (1983) (stating that sedentary work involves occasional standing and walking that "total[s] no more than about 2 hours of an 8-hour workday"). Moreover, the ALJ's RFC assessment prescribed limitations beyond those which Dr. Sarkar recommended, e.g., foot controls, exposure to workplace hazards, sit/stand option, usage of a cane for walking long distances. (Tr. 21). Thus, substantial evidence confirms the ALJ's decision to accord only "some weight" to Dr. Sarkar's medical opinion concerning Schultz's limitations. (Tr. 23).

### C. VE Hypothetical

The Court also finds that the ALJ's hypothetical to the VE appropriately accounted for Schultz's physical limitations. There is that there is no evidence in the record that would support

17

imposing more restrictive limitations than those already specified in the ALJ's hypotheticals. Accordingly, the ALJ was not required to include such limitations in his hypothetical question to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, No. 13-10687, 2013 U.S. Dist. LEXIS 176870, at *24-25 (E.D. Mich. Dec. 17, 2013) (same). As such, Schultz's argument that the ALJ formed an inaccurate hypothetical is without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment [10] be GRANTED and the Commissioner's decision be AFFIRMED.

Dated: April 28, 2016           s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
         United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not

18

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 28, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager